BOSTETTER *v.* KIRSCH COMPANY.

1. LIBEL AND SLANDER—PLEADING—SPECIAL DEFENSES—QUALIFIED
   PRIVILEGE.
   Motion to strike special defenses in defendant's answer in action
   of libel was properly denied where claim, that defendant's
   allegations were recitals of evidence rather than of facts and
   were irrelevant, was not well founded and the answer, includ-
   ing the special defenses, fairly presented issue as to whether
   facts supported defendant's claim of a qualified privilege.

2. SAME—QUALIFIED PRIVILEGE—STATUTES—MITIGATION—JUSTIFICA-
   TION.
   A defendant in an action of libel is entitled to raise issue of
   qualified privilege and produce evidence in support thereof in
   view of statute authorizing presentation of proof of mitigat-
   ing circumstances notwithstanding pleading or attempt to
   prove justification (3 Comp. Laws 1929, § 14469, as amended
   by Act No. 279, Pub. Acts 1931).

3. SAME—TRUTH.
   A defendant in action of libel is entitled to prove that publica-
   tion was true and that, fairly construed, it did not refer to the
   plaintiff.

4. SAME—QUALIFIED PRIVILEGE—QUESTION FOR COURT.
   Whether or not publication by private corporation that money
   which had been paid over in trust to city in which corpora-
   tion's plant was located had been used for purposes other

   Common interest as basis for qualified privilege, see 3 Restatement,
   Torts, § 596.

than that for which it was paid was qualifiedly privileged *held*, a question for determination by the court in action of libel brought by member of city commission against the corporation.

5. Same—Evidence—Qualified Privilege.

When the occasion and attending circumstances of an alleged libel are not in dispute, the question of privilege is one of law for the court.

6. Same—Qualified Privilege.

A qualified privilege extends to all communications made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty and embraces a duty not a legal one but of a moral or social character of imperfect obligation.

7. Same—Malice—Qualified Privilege.

In the absence of a showing of malice in making publication in newspaper of facts relative to use of fund presented to city by defendant for purpose of erecting warning signals at street crossing over railroad, which fund was presented incident to closing of street separating portions of defendant's factory, defendant would not be liable in action of libel to plaintiff, a member of city commission, since both defendant and the public had an interest in the subject matter of the controversy rendering the publication qualifiedly privileged.

8. Same—Instruction—Qualified Privilege—Falsity—Malice— Evidence.

Instruction in action of libel that plaintiff had the burden of establishing the falsity of statements made in qualifiedly privileged publication and malice on the part of defendant in making publication thereof was proper.

9. Same—Directed Verdict—Qualified Privilege—Malice.

In libel action motion to direct verdict for plaintiff except on question of damages was properly denied where alleged libelous publication was qualifiedly privileged, hence issue as to malice on part of defendant was for jury.

10. Same—Qualified Privilege—Malice—Burden of Proof.

In libel action wherein publication is claimed to have accused city commission of which plaintiff was a member, of a breach of trust, plaintiff had burden of proving malice where publication was qualifiedly privileged.

11. SAME—INSTRUCTIONS—PREJUDICE.

In libel action, charge to jury when construed in its entirety *held*, to have fairly presented to the jury the issues to be determined and alleged inconsistencies therein not prejudicial to plaintiff.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted October 7, 1947. (Docket No. 10, Calendar No. 43,352.) Decided January 5, 1948.

Case by Adolph Bostetter against the Kirsch Company, a Michigan corporation, for damages for libel. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Cobb & Nielsen*, for plaintiff.

*J. Paul Wait*, for defendant.

CARR, J. Plaintiff brought suit in the circuit court of St. Joseph county to recover damages claimed to have been sustained by him as the result of the publication by defendant of an alleged libelous article in the Sturgis Daily Journal. At the time of said publication, February 29, 1944, and for some years prior thereto, defendant was engaged in carrying on business in the city of Sturgis. During the war it manufactured certain materials for the United States government. The buildings of defendant were separated by Prospect street, which the record indicates was a main traveled thoroughfare across the tracks of the New York Central Railroad Company. With the approval of the State and Federal authorities, it is claimed, defendant sought, in the early part of 1942, the temporary closing of Prospect street by the city commission to the end that the manufacturing operations in question

might be carried on with greater security and secrecy. The action sought was taken and the street was temporarily closed. This necessitated the improvement and protection of another crossing, and defendant turned over to the city the sum of $6,000, to be used for the installation of warning signals and possibly other facilities at the so-called North Fourth street crossing of the New York Central. The devices in question were not installed, however, quite possibly because of inability to procure them at the time. The greater portion of the money advanced by defendant was used to pay crossing watchmen, apparently without any express consent on defendant's part for such use.

The record indicates that some dissatisfaction arose because of the closing of Prospect street and defendant claims that it was criticized in newspaper articles published from time to time and particularly in a certain pamphlet or handbill prepared and circulated throughout the city. It further appears that the use of the money advanced by defendant to the city was discussed, defendant taking the position through its representatives that the payment of the crossing watchmen therewith was not authorized by the agreement and that defendant was, in consequence, entitled to a return of that portion of the fund used for that purpose, approximately $5,100. In the course of the controversy defendant caused to be published the article on which plaintiff's action is based. It reads as follows:

"To the Citizens of the City of Sturgis:
"NORTH PROSPECT STREET WILL BE
"REOPENED TO THE PUBLIC WED., MAR. 1
"Now, nobody will be further inconvenienced because of the action of the present city commission in arbitrarily closing the North Fourth street crossing.

"There are some who have deliberately endeavored to make a political issue of the North Fourth street-Prospect street matter. Therefore, we felt that the following true facts should be brought to your attention:

"The Kirsch Company petitioned the city to close Prospect street for the duration and turned over to the city the sum of $6,000 for the purpose of opening the North Fourth street crossing and to provide flashers therefor. The former city commission, thus being assured that the opening of the North Fourth street crossing would be without expense to the taxpayers, agreed to the closing of Prospect street for the duration.

"Neither the former city commission nor the Kirsch Company had any thought of depriving anyone of a crossing between Nottawa and Lakeview avenue.

"Neither the former city commission nor the Kirsch Company had any desire or intent to saddle any burden on the taxpayers. The Kirsch Company, therefore, agreed to pay for raising the tracks, and installing and providing flasher lights at North Fourth street.

"The Kirsch Company endeavored to provide a crossing between Nottawa and Lakeview ave: and opposed the closing of the North Fourth street crossing. The Kirsch Company likewise opposed the reopening of Prospect street but only when to do so would have been in violation of the spirit and intent of its agreement with the city, and while an order of the Michigan emergency protective board which prohibited it from doing so was still in effect, and while the war department was demanding 'all out' precautionary measures.

"The Kirsch Company is no longer opposed to reopening Prospect street since the war department is now less exacting in its demands and the Michigan emergency protective defense board has cancelled its restrictions. As a matter of record, we notified

the' city commission that the war department had lessened its demands and informed them that we would reopen Prospect street just as soon as we could do so without violating the order of the Michigan emergency protective board. The present city commission refused to accept our proposal—'as to form.'

"In-so-far as the war department and the Michigan emergency protective defense board are concerned, it is now no longer necessary to keep Prospect street closed. It will, therefore, be reopened as contemplated in our original proposal. Furthermore, this will be done without cost to the taxpayers because THE KIRSCH COMPANY NOW ANNOUNCES TO ALL CONCERNED THAT IT WAIVES ITS JUST CLAIM TO THE MONEY WHICH HAS ERRONEOUSLY BEEN SPENT TO PAY WATCHMEN AT THE NORTH FOURTH STREET CROSSING even though in our opinion and in a written opinion of the city attorney, read to the city commission on February 21st, we are legally entitled to the 'approximately $5,100' which has been used for purposes other than for which it was paid over in trust to the city.

"Kirsch Company"

At the time the said article was published, February 29, 1944, plaintiff was a member of the city commission of Sturgis, having been elected to that office on April 8, 1943. Proceedings for his recall had been instituted and were pending at the time of said publication. At an election held March 7, 1944, plaintiff was recalled, and at the succeeding election held April 3, 1944, he was defeated. Plaintiff alleged in his declaration that as an officer of the city he had conducted himself with integrity, that he bore a good reputation, and that defendant's act brought about his recall and his subsequent defeat for re-election. Plaintiff further claimed that the statement charged plaintiff and the other mem-

bers of the city commission with embezzlement, wrongful appropriation and conversion of trust funds, and breach of trust in the performance of official duties, and that such charges were made maliciously.

Defendant filed its answer to the declaration, admitting plaintiff's official position and admitting, also, that he had properly conducted his office during the period that he held it from April 8, 1943, to March 7, 1944, and denying that defendant intended to injure plaintiff in any manner. It was further asserted that the statements in the article in question, concerning action by the city commission, were made with reference to matters occurring before plaintiff became a member of the commission. Defendant denied that it had libeled plaintiff in any way. Incorporated in the answer were certain so-called special defenses, in which defendant set forth matters that it claimed had occurred prior to the publication of the article, and which, it was alleged in substance, brought about and justified its action, the facts being alleged substantially as above set forth. Plaintiff's motion to strike the special defenses was denied, and on the trial testimony was introduced to support the defendant's claims.

During the course of the trial and at the conclusion of the opening statement of counsel for defendant, made after plaintiff had rested, counsel for plaintiff asked that the court direct the jury to return a verdict for plaintiff, leaving to the jury only the question as to the amount of the damages to which plaintiff was entitled. The motion was not argued, nor were the reasons on which it was based specifically set forth. It may be inferred that it was the claim of plaintiff that defendant, by its answer and the statement of its counsel in open court, had admitted liability. The motion was de-

nied, the case submitted to the jury, and a verdict for defendant returned. A subsequent motion for a new trial was denied, and plaintiff has appealed.

In his statement of reasons and grounds for appeal plaintiff alleges that the trial court was in error in denying the motion to strike the special defenses for the reasons set forth therein, such reasons being in substance that defendant's allegations were recitals of evidence rather than of facts and that the matters so pleaded by defendant were irrelevant and immaterial. The receiving of evidence in support of the special defenses is also assigned as error.

An analysis of the special defenses indicates that plaintiff's criticism is not well founded. It is apparent that defendant undertook to set forth the facts that prompted it to publish the article in question, and that it did so as the basis for its claims that it did not intend to cast aspersions on any official act of the plaintiff and that the circumstances justified it in making the publication in order that the people of the city of Sturgis might be advised as to the facts involved in the controversy. Read in conjunction with the declaration, as it must necessarily be, the answer, including the special defenses, fairly presented the issue as to whether the facts supported defendant's claim of a qualified privilege. Defendant was clearly entitled to raise such issues. 3 Comp. Laws 1929, § 14469, as amended by Act No. 279, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 14469, Stat. Ann. § 27.1369), specifically provided:

"In any action for slander or for publishing a libel, the defendant may prove mitigating circumstances, including the sources of his information and the grounds for his belief, notwithstanding that he has pleaded or attempted to prove a justification."

Defendant was entitled to plead and to prove the facts on which it relied in support of its claim that the article, as published, was true and that, fairly construed, it did not refer to the plaintiff. *Bolton v. Walker,* 197 Mich. 699 (Ann. Cas. 1918 E, 1007). Defendant was also entitled to plead and to prove the matters that it claimed established a qualified privilege in the publication of its statement. The trial court did not err in denying plaintiff's motion to strike the special defenses, or in admitting testimony in support thereof.

Plaintiff further contends that there were numerous errors in the charge to the jury as given by the trial court. Such errors were specifically alleged in the motion for a new trial, and the statement of reasons and grounds for appeal makes reference to the motion and to the paragraphs therein setting forth the specific excerpts from the charge, of which plaintiff complains. Counsel in their brief do not discuss such excerpts specifically other than to call attention to certain statements claimed to be inconsistent with other statements, and to direct attention to the following language in the charge:

"I charge you, members of the jury, that because the article so published by the defendant in this case was qualifiedly privileged, the burden of proof is upon the plaintiff to prove to you by a fair preponderance of the evidence, two things: First, That the charges so made were untrue and false; Second, That the defendant made the publication with actual malice toward the plaintiff."

This brings us to a consideration of the principle question in the case: Was the statement made by the defendant, on which plaintiff bases his alleged right of action, qualifiedly privileged? Under the

facts presented the question was one for the determination of the court. Citing earlier decisions, it was said in *Brewer* v. *Chase,* 121 Mich. 526, 536 (46 L. R. A. 397, 80 Am. St. Rep. 527):

"The overwhelming weight of authority supports the doctrine that the court decides whether the writing is one within a qualified privilege."

To the same effect see *Bolton* v. *Walker, supra,* where it was said:

"When the occasion and attending circumstances are not in dispute the question of privilege is for the court."

See, also, *Powers* v. *Vaughan,* 312 Mich. 297, 306. The general rule is stated in Newell, Slander and Libel (4th Ed.), § 345, in the following language:

"The theory of privilege involves a variety of conditions of some nicety, and also a doctrine not always of easy application to a set of facts; and such being the case in any trial, whether civil or criminal, while the question of libel or no libel, malice or no malice, are matters of fact for a jury, the question of privilege or no privilege where the circumstances under which the communication was made are not disputed, is entirely one of law for the judge."

As noted, the trial court determined the issue in favor of defendant. The facts in the case clearly support the conclusion. In *Bacon* v. *Michigan Central Railroad Co.,* 66 Mich. 166, Justice CHAMPLIN, after discussing the doctrine of absolute privilege, said:

"Qualified privilege exists in a much larger number of cases. It extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to

which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation."

The rule as above stated is approved in Newell, Slander and Libel (4th Ed.), § 341, numerous decisions being cited in support thereof.

In *Trimble* v. *Morrish,* 152 Mich. 624 (16 L. R. A. [N. S.] 1017), defendant was charged with making statements to plaintiff's employer, a physician, which plaintiff claimed were slanderous as to her. The facts disclosed that the physician in question filled his prescriptions at defendant's drug store and in consideration thereof defendant paid a portion of the physician's office rent. It was held by this Court that under the facts there was a qualified privilege, the rule as laid down in the *Bacon Case, supra,* being quoted with approval.

In *Everest* v. *McKenny,* 195 Mich. 649 (L. R. A. 1917 D, 779), the plaintiff was a student at a State institution of learning of which defendant was the president. The action was brought to recover damages for alleged slanderous statements concerning plaintiff, made by defendant to the keeper of a rooming house where plaintiff roomed. After citing and quoting from earlier decisions on the subject it was held that the communication was qualifiedly privileged and hence there was no liability in the absence of a showing of actual malice.

Because of the nature of the facts involved, *Fortney* v. *Stephan,* 237 Mich. 603, is of more than ordinary interest. The plaintiff in the case, who was the sheriff of the county, brought suit to recover damages for libel, basing his action on articles written by defendant and published in a certain newspaper. Said articles charged plaintiff with

gross misconduct in office. The prosecuting attorney of the county, apparently without authorization by plaintiff, challenged the publication of certain reports made by detectives employed by private citizens to investigate rumors concerning official acts of the plaintiff. The articles written by defendant were published by way of answer or rejoinder to the challenge so made. It was held by this Court that it was proper to show the facts in connection with the publication, and that the statements made by defendant were qualifiedly privileged. The jury found for the defendant on the question of actual malice, and the judgment in his favor was affirmed.

In 17 R. C. L. p. 341, and also in 33 Am. Jur. p. 124, we find the general rule with reference to the existence of a qualified privilege stated in the following language:

"A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation."

Under the principles recognized by the foregoing authorities and others of like import the statement published by defendant was qualifiedly privileged. Unquestionably it had an interest in the subject matter of the controversy that was going on in the city concerning the reopening of Prospect street and the repayment to defendant of part of the money deposited by it in 1942. The people of the city were also concerned, and materially so, in both issues under discussion. Under such circumstances defendant was entitled to publish the facts as claimed by it in good faith. Defendant was not liable to plaintiff on the theory of libel unless it made the publication with malice.

The trial court correctly charged the jury that, inasmuch as the publication was qualifiedly privileged, the burden was on plaintiff to establish the falsity of the statements made by defendant and malice on defendant's part. In *Konkle* v. *Haven,* 140 Mich. 472, 477, it was said:

"It is the established rule in this State that, in cases of privileged communications, plaintiff must prove both the falsity of the charge and malice."

Likewise, in the more recent case of *Van Vliet* v. *Vander Naald,* 290 Mich. 365, 371, it was said:

"Where it appears that the occasion is subject to a qualified privilege, the burden is upon the plaintiff to prove the untruth of the statements and actual malice."

Also in point on the question as to the burden of proof, as well as on the facts necessary to be shown in order to establish a qualified privilege, are *Edwards* v. *Chandler,* 14 Mich. 471 (90 Am. Dec. 249); *Howard* v. *Dickie,* 120 Mich. 238; *Westerhouse* v.

*DeWitt,* 215 Mich. 295; *Mundy* v. *Hoard,* 216 Mich. 478.

Plaintiff's request that the trial court direct the jury to return a verdict for the plaintiff, leaving only the question of the amount of the damages for the jury to determine, was properly denied. As above pointed out the burden of proof was on plaintiff to show that he had been libeled by false statements on the part of defendant, and that such statements were made with malice toward plaintiff. It was incumbent on plaintiff, therefore, in order to recover damages that he establish his right to do so by competent proof. The factual issues in the case were for the jury. Plaintiff's request to charge that, if the publication accused the city commission of a breach of trust then the defendant was liable for all actual damages resulting to plaintiff "regardless of whether there was any malice upon the part of defendant," was, for the reasons above indicated, properly denied. Apparently such request was predicated on the theory that there was no qualified privilege, and hence that the burden of proof on the question of malice did not rest on plaintiff.

The other excerpts from the charge, as set forth in plaintiff's motion for a new trial, have been examined, although not specifically discussed by counsel. We find in such excerpts no error prejudicial to plaintiff. Construing the charge in its entirety it fairly presented to the jury the issues to be determined. Counsel point to certain alleged inconsistencies between specific statements made to the jury by the trial court, certain of such statements being more favorable to plaintiff than the legal principles involved justified. However, plaintiff may not be heard to complain because of such situation. The record indicates conclusively that he could not have been prejudiced because of the alleged inconsistencies in the charge.

Other questions raised by counsel, incident to the main issues herein discussed, have been considered and found to be without substantial merit. The determination of such matters is governed by the conclusions above indicated. The judgment of the trial court is affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.