SCHLINKERT v. HENDERSON.

1. PLEADING—MOTION TO DISMISS—WELL-PLEADED ALLEGATIONS.
   Well-pleaded allegations of the declaration must be taken as true in passing upon a motion to dismiss.

2. OFFICERS—LIQUOR CONTROL COMMISSION—IMMUNITY—STATUTES.
   Statute relieving members of the State liquor control commission of personal liability for damages to any person because of any act done by the commission or any member thereof in the performance of their duties in the administration and in the carrying forth of the purposes and provisions of the act granted to each member a greater immunity than they otherwise would would have (CL 1948, § 436.12).

3. SAME—LIQUOR CONTROL COMMISSION—LETTER TO CIVIL SERVICE COMMISSION REGARDING PERSONNEL.
   A member of the State liquor control commission is charged with the duty of informing the State civil service commission of the qualifications of an acceptability of service of employees of the commission and a letter by plaintiff, a member of the liquor control commission, to the civil service commission relative to reorganization of the personnel under the liquor control commission in which there was discussion of plaintiff, then a liquor control commission employee, was an official act of defendant, notwithstanding the liquor control commission might designate some of its employees to make reports to the civil service commission (CL 1948, § 436.12).

4. LIBEL AND SLANDER—OFFICERS—PRIVILEGED COMMUNICATION.
   A member of the liquor control commission had an official right to permit the public to be informed as to his opposition to proposed reorganization of the personnel under the commission, hence his making a letter to the civil service commission available to the public which plaintiff claimed to be libellous was privileged (CL 1948, § 436.12).

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Pleading § 332.
[4, 6] 33 Am Jur, Libel and Slander § 125.
[5] 33 Am Jur, Libel and Slander § 124.
[7] 14 Am Jur, Costs § 91.

5. SAME—PRIVILEGED COMMUNICATION.
  A privileged occasion is an occasion when for the public good and in the interests of society one is freed from liability that would otherwise be imposed on him by reason of the publication of defamatory matter.

6. SAME—ABSOLUTELY PRIVILEGED COMMUNICATION.
  An absolutely privileged communication is one for which, by reason of the occasion on which it is made, no remedy is provided for the damages in a civil action for slander or libel.

7. COSTS—PUBLIC QUESTION—LIBEL.
  No costs are allowed in action for libel brought by a former employee of the liquor control commission against a former member of the commission, a question of public interest being involved.

Appeal from Ingham; Coash (Louis E.), J. Submitted June 5, 1951. (Docket No. 1, Calendar No. 45,047.) Decided September 5, 1951.

Case by John K. Schlinkert against Harry Henderson for alleged libel. Declaration dismissed on motion. Plaintiff appeals. Affirmed.

*Raymond R. Campbell*, for plaintiff.

*Louis J. Colombo*, for defendant.

REID, C. J. This is an action for libel. From an order of the trial court dismissing the action on motion, the plaintiff appeals.

Well-pleaded allegations of the declaration must be taken as true.

Plaintiff's action is founded on a letter written by defendant, who at the time was a member of the Michigan State liquor control commission, to the Michigan State civil service commission, having reference to plaintiff, who at that time was an employee of the Michigan State liquor control commission. The letter was addressed to the civil service

commission, attention: Mr. Arthur Rasch, director, and is recited in the declaration as follows:

*"Gentlemen:*

"The liquor control commission forwarded to your office, under date of August 4th, a purported reorganization program.

"My vote was cast in opposition to the proposal and I announced I would file a separate recommendation to your commission.

"The proposed reorganization program, stripped of all of its superfluous verbiage, is nothing more than a subterfuge, under the pretense of economy, designed to dispose of General Louis A. Kunzig and replace him with one John K. Schlinkert. It also embodies the reshuffling of administrative responsibilities that would prepare the ground and make it fertile for the return of the political connivery and corruption with which the commission was infested prior to the creation of the position of executive director and the appointment of General Kunzig. This is particularly true in view of the fact that fear of an investigation by a one-man grand jury has been eliminated. The history of liquor commissions in several States has been one of continuous political chicanery and corruption, a condition Michigan can proudly point to as nonexistent since the creation of General Kunzig's position.

"The proposed reorganization program provides for a new position to be known as that of director of purchasing and merchandising. The duties as outlined cover a preponderant list of important functions controlling virtually every department of the commission. It is intended that Mr. Schlinkert, whose present position is titled director of purchasing, take over these responsibilities. His present title is a misnomer, and he is merely a supervisor in charge of a small clerical staff which prepares inventory and sales reports from commission records, as a guide for purchasing requirements. Mr. Schlinkert is not fitted by temperament, experience or ca-

pacity to take the responsibility of even a small portion of the duties outlined. Mr. Schlinkert has repeatedly boasted that he made a sizable contribution to the Democratic campaign fund and he expected to be rewarded. He is the only civil service employee with the commission, who, to my knowledge, has indulged in partisan politics since I have been a member of this bipartisan commission. In the final analysis the program is designed to eliminate General Kunzig, a man of integrity and capacity, who holds the respect and affection of the hundreds of employees of the commission and promote Mr. Schlinkert, whose qualifications are dubious and who, in effect, is paying for a promotion that he could not attain by meritorious service. In conclusion, it is my opinion that if this ridiculous subterfuge is consummated, it will be a severe blow to the civil service structure. It will create apprehension of insecurity in the minds of thousands of fine men and women now in the employment of the State of Michigan.

"In view of the foregoing, it is my recommendation that the proposed reorganization program be rejected.

"Yours very truly,
"HH/hp        HARRY HENDERSON, Commissioner"

The declaration alleges that defendant, actuated by malice, caused the letter to be made available to a number of newspapers, naming 4 newspapers, and that defendant well knew the falsity of the charges and inferences in said letter; it further alleges that plaintiff has never been guilty of paying for a promotion, making sizable donation to the Democratic campaign fund during his employment by the liquor control commission, nor playing politics in connection with his such employment, nor has he, plaintiff, been so suspected.

Plaintiff claims that defendant was not charged with any authority or duty to make a rating for

plaintiff, who was an employee of the liquor control commission of which defendant was one of the 3 commissioners, plaintiff being in the classified State civil service.

Part of the controversy, of which this suit is also a part, is recited in *Kunzig* v. *Liquor Control Commission,* 327 Mich 474.

Defendant answered the declaration. He admits that he released a copy of the letter to newspapers but denies the imputed malice and claims the letter to be an absolutely privileged communication made by him in his capacity as member of the State liquor control commission, under CL 1948, § 436.12 (Stat Ann § 18.983), which is as follows:

"The commission, or any member of the commission, shall not be personally liable for any action at law for damages sustained by any person because of any action performed or done by the commission, or any member of the commission, in the performance of their respective duties in the administration and in the carrying forth of the purposes and provisions of this act."

It must be considered that the legislature, in enacting this statute, intended to and did grant to the commission in question and each member thereof, a greater immunity than they would otherwise have.

The controlling question is whether defendant's privilege under the above-quoted statute is absolute. An amendment to the State Constitution, art 16, § 11, provides that the legislature may by law establish a liquor control commission and makes certain provisions as to the powers and duties of the commission.

The legislature under the authority of the Constitution passed an act (of which CL 1948, § 436.12 [Stat Ann § 18.983] is one section) providing for the appointment of 3 commissioners and in general

terms, it may be said their powers and duties include control of liquor traffic in the State.

Defendant as a member of the commission was charged with the duty of informing the civil service commission of the qualifications of and acceptability of service of employees of the commission.

The writing of the letter in question was an official act of defendant and within the scope of his duties, notwithstanding that the entire commission might designate some of its employees to make reports to the State civil service commission on the services and qualifications of employees of the liquor control commission.

Plaintiff cites and relies on the case of *Murray* v. *Brancato,* 290 NY 52 (48 NE2d 257, 146 ALR 906), a New York case brought against a judge of a county court. In that case the declaration was held sufficient by the court of appeals in a majority opinion of a divided court. The majority opinion held the publication by Brancato of his opinion in certain publications to be outside of the scope of the judicial duties of the judge, and to be actionable. The court in that case say at page 57, "Concededly the law placed upon the defendant no duty in connection with such publication."

In the instant case, the public was interested in the proposed reorganization of the personnel under the commission of which defendant was a member. Under all the circumstances, defendant had an official right to permit the public to be informed.

In *Trebilcock* v. *Anderson,* 117 Mich 39, we say (syllabus 1):

"A communication from the mayor of a city to the common council, advising them of his grounds for vetoing a resolution passed by them, is, so far at least as the matter therein contained is pertinent to the subject, absolutely privileged."

We further note the following:

"A privileged occasion is an occasion when for the public good and in the interests of society one is freed from liability that would otherwise be imposed on him by reason of the publication of defamatory matter." 53 CJS, p 142.

"An absolutely privileged communication is one for which, by reason of the occasion on which it is made, no remedy is provided for the damages in a civil action for slander or libel." 53 CJS, p 143.

The occasion on which defendant Henderson wrote the letter in question was of public interest. The letter itself was within the scope of such a privileged occasion, and its publication was aimed at the same public purpose.

The judgment appealed from dismissed the plaintiff's action. The judgment is affirmed. No costs, a question of public interest being involved.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.