### KELLY v. McNAYR.

No. 63-L-142.

Circuit Court, Dade County.

July 18, 1963.

Milton M. Ferrell and J. M. Flowers, both of Miami, for plaintiff.

Darrey A. Davis, County Attorney, for defendant.

RALPH O. CULLEN, Circuit Judge.

This cause came on to be heard upon defendant's motion to dismiss and plaintiff's motion to compel answer to question. The court has considered said motions and heard argument of counsel thereon.

This action for libel is brought by a former sheriff of Dade County against the present county manager of Dade County. The plaintiff was removed from his office and discharged as sheriff by the defendant. The alleged libelous matter is set forth in a written report to the board of county commissioners of Dade County.

The sole contention of defendant is that the complaint fails to state a cause of action on the ground that the statements contained in the report by the chief executive officer of the county government to its legislative body, i.e., board of county commissioners, covering an administrative official of the county serving under the jurisdiction of the chief executive is absolutely privileged, as a matter of law, and that as a consequence, such governmental executive is immune from liability for defamation in the premises.

In Fiore v. Rogero, Fla. App. 1962, 144 So.2d 99, and in Robertson v. Industrial Insurance Company, Fla. 1954, 75 So.2d 198, the procedure of raising and presenting the question of law as to absolute privilege in a defamation action by motion to dismiss was followed with apparent approval. In Coogler v. Rhodes, 38 Fla. 240, 21 So. 109, and Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, the Supreme Court held that whether slanderous or libelous words uttered or printed are a privileged communication depends upon the circumstances under which they were uttered or printed, and whether or not the facts and circumstances, when conceded, establishes the privilege, is a question of law for the court. While it is a well-established rule of pleading that a motion to dismiss admits all facts well-pleaded, in truth and fact defendant concedes in his argument and memorandum brief that the facts and circumstances regarding the publication are as set forth in the complaint.

The facts being conceded, is the publication set forth in the complaint cloaked with an absolute privilege as a matter of law? That is the determinative issue on this motion to dismiss.

Privileged communications or publications are of two kinds — (a) absolute, and (b) conditional or qualified. When the communication is absolutely privileged, no action will lie for its publication, no matter what the circumstances under which it is published. When qualified, however, the plaintiff may recover if he shows that it was actuated by malice.

"Absolute privilege" is defined in 33 Am. Jur., Libel and Slander, §125, at page 123, as follows —

> An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously.

> The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of state, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the state, . . .

Florida has applied the doctrine of absolute privilege to judicial, quasi judicial, legislative and quasi legislative proceedings. See Coogler v. Rhodes, supra; Budd v. J. Y. Gooch Co., (1946) 157 Fla. 716, 27 So.2d 72; Robertson v. Industrial Insurance Company, supra; and Fiore v. Rogero, supra.

In 20 Fla. Jur., Libel and Slander, §66, page 587, it is said —

> In general, statements made in connection with the performance of both legislative and executive function of government, either state, federal, or local, are absolutely privileged.

That this is the general prevailing rule is set forth in 33 Am. Jur., Libel and Slander, §143, page 140 —

> The heads of executive departments, when engaged in the discharge of duties imposed upon them by law, are immune from civil suits for damages arising from official communications in respect of matters within their authority, even though such communications are prompted by personal or even malicious motives. The motives underlying the discharge of official duty are not material in determining liability for defamation.

> \*     \*     \*

> Where the publication of an absolutely privileged communication from one governmental official to another is regularly authorized in accordance with law, so that all interested persons are entitled to receive and inspect it, its subsequent circulation is protected by law. And the author of the communication has the same right as other persons to give the report to others without incurring liability as for the publication of a libel.

And in 43 Am. Jur., Public Officers, §273, page 85, the general rule is stated as follows —

> As a rule, a public officer, whether judicial, quasi-judicial, or executive, is not personally liable to one injured in consequence of an act performed within the scope of his official authority, and in line of his official duty. In order that acts may be done within the scope of official authority, it is not necessary that they be prescribed by statute, or even that they be specifically directed or requested by a superior officer, but it is sufficient if they are done by an officer in relation to matters committed by law to his control or supervision, or that they have more or less connection with such matters, or that they are governed by a lawful requirement of the department under whose authority the officer is acting.

In the recent case of Dade County, et al v. Kelly, Fla., 153 So. 2d 822, the Supreme Court of Florida declared that the county manager had, through constitutional amendment and appropriate supportive home rule enactments, the power to control the tenure of the metropolitan sheriff at his will. It was, this court notes, in the exercise of that power that the events giving rise to this proceeding find their genesis.

In numerous federal and state decisions the doctrine of absolute privilege has been applied to various executives and officials of state and local governments. Barr v. Matteo, (1959) 360 U.S. 564, 79 S. Ct. 1335, 3 L. Ed. 2d 1434 (press release by acting director of office of rent stabilization setting forth reasons for suspending two officers of the agency); Tanner v. Galt, (1925) 20 Ohio App. 243, 153 N. E. 124 (resolution of county commissioners regarding false report of county surveyor); Hughes v. Bizzell, (1941) 189 Okla. 472, 117 P. 2d 763 (statements by university officials to board of regents regarding incompetence of librarian); Montgomery v. City of Philadelphia, (1958) 392 Pa. 178, 140 A. 2d 100 (press releases by city architect and deputy commissioner of public property); Sanford v. Howard, (1939) 185 Okla. 660, 95 P. 2d 644 (report by president of university to board of regents regarding misconduct of employee); Schlinkert v. Henderson, (1951) 331 Mich. 284, 49 N. W. 2d 180 (letter by member of state liquor control commission to state civil service commission); Trebilcock v. Anderson, (1898) 117 Mich. 39, 75 N. W. 129 (message by mayor to city council stating reasons for veto of bill); Larson v. Doner, (1961) 32 Ill. App. 2d 471, 178 N. E. 2d 399 (resolution of city commission regarding malfeasance of city clerk); DeBolt v. McBrien, (1914) 96 Neb. 237, 147 N. W. 462 (letter of state superintendent of schools to county superintendent as to misconduct of teacher); Reagan v. Guardian Life Ins. Co., (1942) 140 Tex. 105, 166 S. W. 2d 909 (statement by agent of insurance company to board of insurance commissioners).

In the annotation in 132 ALR 1340, 1345, the rule is stated —

> All relevant statements contained in a communication made by an executive officer with reference to matters committed by law to his control or supervision, and directed to the particular person or persons specially interested in such matters, are within the protection of absolute privilege.

In determining the question of whether or not certain libelous matter is relevant or pertinent to the transaction, the courts are inclined to a liberal rather than a constrained or close construction. Tanner v. Gault, 20 Ohio App. 243, 153 N. E. 124, 125.

In cases of this nature, the court must weigh two considerations of great importance which collide head-on — one, the protection

of the individual citizen against damage caused by oppressive or malicious action on the part of governmental officials; and the other, the protection of the public interest by shielding responsible governmental officers against the hazards of damage suits brought on account of action taken in the exercise of their official responsibilities.

In Barr v. Matteo, supra, 3 L. Ed. 1434, 1441, the United States Supreme Court stated —

The reasons for the recognition of the privilege have been often stated. It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government. The matter has been admirably expressed by Judge Learned Hand:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has sufferd from their errors. As is so often the case, the answer must be found in a balance between the evil inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to constant dread of retaliation.

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that such cannot be the meaning of the limitation without defeating the whole doctrine. . . ."

Accordingly, for the foregoing reasons, the court is constrained to the conclusion that the publication of the alleged libelous matter, accomplished by the defendant county manager in his capacity as such officer and within the scope of his powers, unfortunate as the consequences of such publication may be to the offended

190

in any given case, is within the cloak of absolute privilege afforded to one in the defendant's position as a public officer, and, therefore, it is considered, ordered and adjudged as follows —

(1) Plaintiff's complaint shall be, and hereby is, dismissed. (2) Plaintiff is granted twenty days within which to serve and file an amended complaint, if he is so advised. (3) If the plaintiff fails to serve and file an amended complaint as herein authorized, then, and in that event, this dismissal shall stand with prejudice and counsel for either party may then present for entry a final judgment. (3) By reason of the above ruling, the motion to compel answer is moot.