## PARKS v JOHNSON

Docket No. 77-137. Submitted February 23, 1978, at Detroit.—Decided
June 19, 1978. Leave to appeal applied for.

Verna M. Parks, a counselor in the Detroit Public School System,
commenced a libel suit against Zodie A. Johnson, the principal
at the plaintiff's school. The defendant, as part of her duties
under a collective bargaining agreement, prepared recommen-
dations for disciplinary action against staff members where
circumstances demanded such action. The alleged defamation
occurred when she prepared a memorandum, in the course of
this duty, which ultimately was partially responsible for the
plaintiff's transfer to another school. The defendant moved for
summary judgment on two grounds: (1) that the communica-
tion, prepared in the course of her official duties was absolutely
privileged from liability for defamation, and (2) assuming that
only a qualified privilege was applicable, the plaintiff had not
alleged sufficient facts to raise the issue of malice, which would
be required to overcome the privilege. The motion for summary
judgment was denied, Wayne Circuit Court, James Montante, J.
The defendant appeals by leave granted. *Held:*

There was no absolute privilege for the defendant since such
a privilege extends only to persons acting in an administrative
or legislative capacity; however, the defendant was covered by
a qualified privilege. The plaintiff had presented enough evi-
dence to raise a factual issue as to whether the defendant
maliciously communicated false information.

Affirmed.

BEASLEY, P. J., dissented. He would hold that while the
defendant did not have an absolute privilege, she did have,
under the circumstances of this case, a very strong privilege

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur 2d, Libel and Slander § 193.
[2, 3] 50 Am Jur 2d, Libel and Slander § 194.
[4, 5] 50 Am Jur 2d, Libel and Slander §§ 196–197.
[6] 73 Am Jur 2d, Summary Judgment § 20.
[7, 10] 73 Am Jur 2d, Summary Judgment § 26.
[8] 50 Am Jur 2d, Libel and Slander § 174.
[9, 10] 50 Am Jur 2d, Libel and Slander § 205.

not easily lost or defeated. He would also hold that this privilege protected her where she delivered the statement only to the regional superintendent to whom she was obligated to deliver it as part of her employment responsibility and where the pleadings filed by the plaintiff do not indicate a lack of good faith or malice on the part of the defendant. He would reverse the trial court and would grant summary judgment.

OPINION OF THE COURT

1. LIBEL AND SLANDER—PUBLICATION—FALSE—MALICE—ABSOLUTE PRIVILEGE.

There can be no action for libel even if a publication was false and maliciously and knowingly published where an absolute privilege is applicable.

2. LIBEL AND SLANDER—ABSOLUTE PRIVILEGE—LEGISLATIVE, JUDICIAL AND EXECUTIVE PROCEEDINGS.

Generally, absolute privilege from being called to account for language used is confined to cases in which the public service or the administration of justice is involved, such as language used in legislative, judicial and executive proceedings and is not intended so much for the protection of those engaged in the service as it is for the promotion of the public welfare.

3. LIBEL AND SLANDER—ABSOLUTE PRIVILEGE—FEDERAL EMPLOYEES—STATE EMPLOYEES.

The Federal rule which extends to all Federal employees an absolute privilege from liability for defamation for publications made within their particular line of duty has not been accepted in Michigan to provide an absolute privilege for all state employees.

4. LIBEL AND SLANDER—PUBLIC SERVANTS—SCOPE OF EMPLOYMENT—QUALIFIED PRIVILEGE.

All public servants acting within the scope of their employment do have a qualified privilege from liability for defamation when acting within the scope of that employment.

5. LIBEL AND SLANDER—PUBLIC OFFICIALS—SCHOOL BOARD MEMBERS—SCHOOL PRINCIPAL—GOVERNMENTAL OR LEGISLATIVE FUNCTION—ABSOLUTE PRIVILEGE.

A school board member, who performs a type of governmental or legislative function, is different than a school principal, who has no such function, for purposes of determining whether an absolute privilege from liability for defamation exists when performing within the scope of employment.

6. JUDGMENT—SUMMARY JUDGMENT—MOTIONS—NO GENUINE ISSUE OF MATERIAL FACT—OPPOSING PARTY.

A party who opposes a motion for summary judgment which alleges that there is no material issue of fact and which is supported by affidavits or other documentation is required to respond with some evidentiary material rebutting the motion.

7. JUDGMENT—SUMMARY JUDGMENT—NO GENUINE ISSUE OF MATERIAL FACT—BENEFIT OF DOUBT—COURT RULES.

The courts are liberal in finding that a "genuine issue" does exist when ruling on motions for summary judgment based on there being no genuine issue of material fact; in ruling on such motions (1) a court should give the benefit of any reasonable doubt to the party opposing the motion, and (2) before granting such motion the court must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3]).

DISSENT BY BEASLEY, P. J.

8. LIBEL AND SLANDER—MALICE—ISSUE OF FACT.

*Malice is a concept or word of art in the law of libel; a fact issue regarding malice does not necessarily arise merely because a litigant claims that a statement was made with malice; whether malice actually exists sufficient to defeat a qualified privilege depends upon the occasion when the statement is made, the relationship between the maker of the statement and the person concerning whom it relates, to whom it is made and what the statement contains.*

9. LIBEL AND SLANDER—QUALIFIED PRIVILEGE—SCHOOL PRINCIPAL—PERFORMANCE OF DUTIES.

*A defendant in a libel action, who was a school principal, and whose duties included recommending disciplinary action for staff members when in her opinion their actions interfered with the educational process, had a very strong privilege from liability for libel in the performance of her duty; this privilege should not have been lost or defeated where the statement complained of contained only matters relevant and relating to plaintiff's responsibilities as a school counselor and was limited to matters pertinent to the employment relationship between plaintiff, as a school counselor, and defendant, as a school principal, and where the statement was delivered by the defendant only to the regional superintendent to whom the defendant was obligated to deliver it as part of her employment responsibility.*

10. LIBEL AND SLANDER—SUMMARY JUDGMENT—NO GENUINE ISSUE OF
    MATERIAL FACT—QUALIFIED PRIVILEGE—MALICE—LACK OF
    GOOD FAITH.

> *A defendant's motion, in a libel action, for summary judgment on
> the ground that there was no genuine issue of material fact
> should have been granted where the defendant was cloaked
> with a very strong qualified privilege and the plaintiff had
> introduced nothing to indicate actual malice or lack of good
> faith on the part of the defendant sufficient to deprive her of
> her privilege to express opinions, as required by her position as
> school principal, that might otherwise be actionable defama-
> tion.*

*Ronald W. Crenshaw,* for plaintiff.

*Miller, Klimist, Cohen, Martens & Sugerman,
P. C.* (by *Stephen C. Cooper),* for defendant.

Before: BEASLEY, P. J., and BASHARA and D. C.
RILEY, JJ.

D. C. RILEY, J. Defendant appeals, by leave
granted, denial of her motion for summary judg-
ment. Plaintiff, a counselor in the Detroit Public
School System, filed a libel suit alleging that she
was defamed in a memorandum written by defend-
ant, the principal of her school. Defendant, as part
of her duties under a collective bargaining agree-
ment, prepared recommendations for disciplinary
action against staff members where circumstances
demanded such action. The claimed libelous mem-
orandum, written in the performance of defend-
ant's duty, ultimately was partially responsible for
plaintiff's transfer to another school.

Defendant moved for summary judgment on two
grounds. First, she contended that the communica-
tion, which was written and processed in the
course of her official duties, was absolutely privi-
leged from liability for defamation. GCR 1963,
117.2(1). Second, assuming that only a qualified

privilege was applicable, plaintiff had not alleged sufficient facts to raise the issue of malice, which would be required to overcome the privilege. GCR 1963, 117.2(3).

The trial court denied the motion, holding that the communication had only a qualified privilege and that plaintiff's response to the claim of no material fact in issue had sufficiently put malice in issue. We will consider both of those decisions.

If absolute privilege applies, there can be no action for libel even if the information was false and maliciously and knowingly published. *Tocco v Piersante,* 69 Mich App 616; 245 NW2d 356 (1976). Because of this complete bar to defamation liability, the scope of absolute liability in Michigan law has traditionally been narrowly construed:

"It is the policy of the courts to keep the doctrine of absolute privilege within these narrow limits.

* * *

" 'Generally speaking, absolute privilege is confined to cases in which the public service or the administration of justice requires complete immunity from being called to account for language used. It applies more directly to matters of public concern, such as language used in legislative, judicial and executive proceedings; and it is not intended so much for the protection of those engaged in the service, as it is for the promotion of the public welfare.' 36 C. J. pp. 1240, 1241.

"Our court recognizes the rule of absolute privilege, but it has repeatedly refused to extend its application beyond the necessities of the judicial, legislative, and military occasions. *Mundy v Hoard,* 216 Mich. 478 [185 NW 872 (1921)]; *Bolton v Walker,* 197 Mich. 699 [164 NW 420 (1917)] (Ann. Cas. 1918E, 1007); *Trebilcock v Anderson,* 117 Mich. 39 [75 NW 129 (1898)]; *Wachsmuth v National Bank,* 96 Mich. 426 [56 NW 9 (1893)] (21 L. R. A. 278)." *Raymond v Croll,* 233 Mich 268, 272–273; 206 NW 556 (1925).

See also *Timmis v Bennett,* 352 Mich 355; 89 NW2d 748 (1958).

Defendant's action, while committed in the course of an official duty, does not fall within these classic limits of absolute privilege. In *Tocco v Piersante, supra,* this Court discussed at length the privilege to be afforded to a public employee acting in the course of his or her employment. In *Tocco,* the defendant, who headed the Organized Crime Division of the Michigan Attorney General's office, was alleged to have libeled plaintiff by his participation in the production and showing of a documentary film on crime in Michigan. The defendant argued that his actions were protected by absolute privilege.

The *Tocco* Court began by reviewing the historical view of the scope of absolute privilege in Michigan. 69 Mich App at 628–629. The Court then discussed a line of Federal cases, in particular *Spalding v Vilas,* 161 US 483; 16 S Ct 631; 40 L Ed 780 (1896), and *Barr v Matteo,* 360 US 564; 79 S Ct 1335; 3 L Ed 2d 1434 (1959), in which absolute privilege had been extended to all Federal employees for publications within their particular lines of duty. The Court also noted similar rules in other states. See *Matson v Margiotti,* 371 Pa 188; 88 A2d 892 (1952).

Returning to Michigan law, the Court held that the Federal rule extending absolute privilege had not been adopted in this state:

"The question is whether a similar rule obtains in this jurisdiction. We hold that it does not and that defendant under the circumstances of this case, is entitled to a qualified, not an absolute, privilege." 69 Mich App at 632.

The Court pointed out that previous cases had

not applied absolute privilege to executive officials or employees acting in the scope of their employment.[1] Citing *Raymond v Croll, supra,* the *Tocco* Court stated that an executive official has no absolute privilege unless engaged in activities of or relating to an administrative or legislative body, but does have a qualified privilege if acting under an official duty. 69 Mich App at 634–635.

In the case at bar defendant was not acting in any judicial or legislative capacity when she wrote the allegedly libelous memorandum. Her duty related solely to employment and supervision procedures within the school system. Since she was acting in her official capacity, she does have a qualified privilege, as do all public servants acting within the scope of their employment:

"A qualified privilege affords sufficient protection in most instances for the public servant while at the same time it does not discourage uninhibited robust and wide-open debate on important public issues." *Stewart v Troutt,* 73 Mich App 378, 390; 251 NW2d 594 (1977) (D. E. HOLBROOK, J., concurring).

We do not believe that the opinion in *Brunn v Weiss,* 32 Mich App 428; 188 NW2d 904 (1971), calls for a different result. In *Brunn,* several teachers claimed that they were libeled in a newsletter published by the defendant school board members. One of the defendants' contentions was that the newsletter was absolutely privileged. The Court stated that although under certain conditions (without specifying those conditions) a school board member would have an absolute privilege, there was only a qualified privilege for publication of the newsletter.

*Brunn, supra,* is distinguishable from the case at bar

---

[1] In *Schlinkert v Henderson,* 331 Mich 284; 49 NW2d 180 (1951), a statutory privilege applied which is not present in the case at bar. The Court in *Powers v Vaughan,* 312 Mich 297; 20 NW2d 196 (1945), held that if an absolute privilege applied, it was only because the official was involved in a quasi-judicial or quasi-legislative activity.

in that a school board member, who performs a type of governmental or legislative function, is different than a school principal, who has no such function. No cases have been cited to this Court in which the official functions of a person similarly situated to defendant have been protected by an absolute privilege.

Having decided that a qualified privilege applies, the issue becomes whether the trial court erred in ruling that a material issue of fact existed on whether defendant maliciously published the memorandum. When a motion for summary judgment alleging no material issue of fact, with supporting affidavits or other documentation, is brought under GCR 1963, 117.2(3), the opposing party is required to respond with some evidentiary material rebutting the motion. *Trombetta v Detroit, T & I R Co,* 81 Mich App 489; 265 NW2d 385 (1978). Plaintiff here eventually responded to the motion with affidavits and letters, but defendant alleges that these documents were not relevant to the issue of malice.

The appropriate standards for use in ruling on a motion for summary judgment under GCR 1963, 117.2(3) are stated in *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973):

"The courts are liberal in finding that a 'genuine issue' does indeed exist. As Honigman & Hawkins correctly comments, (1) the court will 'give the benefit of any reasonable doubt to the opposing party' and (2) 'the court must be satisfied that it is impossible for the claim or defense to be supported at trial *because of some deficiency which cannot be overcome.*' " (Emphasis in 389 Mich.)

It is true, as defendant asserts, that the material filed in opposition to the motion reflected basically on plaintiff's character, and not on defendant's mental state at the time she published the memorandum to her supervisors. However, these documents do tend to refute, or at least cast doubt upon, the accuracy of the allegations contained in

the original memorandum. Under the liberal standard as expressed in *Rizzo, supra,* we do not find that the trial court erred in ruling that the evidence presented a factual issue as to .whether defendant maliciously communicated false information.[2] See *Iacco v Bohannon,* 70 Mich App 463; 245 NW2d 791 (1976).

Affirmed. Costs to appellee.

Bashara, J., concurred.

Beasley, P. J. *(dissenting).* I respectfully dissent.

In the within case, defendant, a school principal, had the responsibility of recommending disciplinary action for staff members when, in her opinion, their actions interfered with the educational process. Pursuant to that duty, defendant wrote a memorandum recommending disciplinary action against plaintiff and delivered the memorandum personally to the school official who was designated under the collective bargaining agreement to receive it. Defendant did not communicate the memorandum to any other person. The memorandum was based upon personal observations of the defendant and upon reports about the plaintiff which the defendant allegedly received from school employees, students and parents.

The relationship between the parties, taken together with an occasion where defendant was obligated to and could properly express an opinion regarding plaintiff's performance, gives rise to a privilege in the defendant to make an expression which might conceivably otherwise be defamatory and actionable.[1] The fact that defendant was carry-

---

[2] Plaintiff had pled malice in her original complaint.

[1] *Bacon v Michigan Central R Co,* 66 Mich 166, 170; 33 NW 181 (1887), states:

"Qualified privilege exists in a much larger number of cases. It

ing out the essential function of her job and performing her duty, the fact that she was expressing an opinion that she was required to give and the fact that there was not any excessive publication of it, indicate to me that as long as she stayed within the "outer perimeter" of her duties, her privilege protected her against libel or slander claims.[2] Some cases would say that the privilege may be lost if the expression is made with "actual malice", that is, with knowledge that it was false or with reckless disregard of whether it was true or not. In this connection, I would note that the expression made by defendant was one of opinion clearly within the scope of her employment; the fact that her statement was intemperate and unprofessional, although perhaps reflecting on the administrative capability of the maker, is not determinative of the legal issue. I would also note that the allegations made by plaintiff in her complaint and in her answer to the motions for summary judgment and for rehearing, are not of sufficient magnitude or of a quality to support a finding of actual malice.

The issue here is whether plaintiff offers or asserts facts from which an inference of actual malice may arise. Malice is a concept or word of art in the law of libel. A fact issue regarding malice does not necessarily arise merely because a litigant asserts a statement was made with malice.

---

extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty."
*Lawrence v Fox,* 357 Mich 134; 97 NW2d 719 (1959), *Bostetter v Kirsch Co,* 319 Mich 547, 556–557; 30 NW2d 276 (1948).

[2] *Bacon v Michigan Central R Co, supra.* Also, Anno: *Libel and Slander: actionability of statements imputing inefficiency or lack of qualification to public school teacher,* 40 ALR3d 490, 502 and cases cited therein.

Whether actual malice exists sufficient to defeat a qualified privilege depends upon the occasion when the statement is made, the relationship between the maker of the statement and the person concerning whom it relates, to whom it is made and what the statement contains.[3] The statement complained of contains only matters relevant and relating to plaintiff's responsibilities as a school counselor; it is limited to matters pertinent to the employment relationship between plaintiff as a school counselor and defendant as a school principal. The issue is *not* whether the defendant's opinion of plaintiff's performance is correct or even whether allegations in the statement are true, *e.g.,* whether it is true that plaintiff refused to stay after school hours to meet with parents.[4] As indicated, the statement was delivered by defendant *only* to the regional superintendent to whom defendant was obligated to deliver it as part of her employment responsibility.

While, in terms of technical terminology, the Michigan cases would not deem this privilege to be absolute, it is, nevertheless, in the circumstances of this case, a very strong privilege and, although qualified or conditional, it is not easily lost or defeated.[5]

---

[3] 53 CJS, Libel and Slander, pp 158–160, citing *Fortney v Stephan,* 237 Mich 603; 213 NW 172 (1927), and other cases.

[4] Truth is always a defense to alleged libel. But truth is a fact issue and we have here only an issue of the propriety of denial of a motion for summary judgment based upon a claim that there is no genuine issue of material fact. The truth or untruth of the statements, which are not mere expressions of opinion, becomes relevant here, only if plaintiff's claims in her pleadings and in her affidavits are sufficient as a matter of law to give rise to an issue of actual malice or of lack of good faith. For the reasons indicated, neither the issue of actual malice nor of good faith arises on this record. *See, Fortney v Stephan, supra,* p 610.

[5] *Brunn v Weiss,* 32 Mich App 428; 188 NW2d 904 (1971), *Bacon v Michigan Central R Co, supra.*

In responding to defendant's motion for summary judgment under GCR 1963, 117.2(3), plaintiff filed letters of various interested persons attesting to plaintiff's good personal qualities, habits of hard work, including overtime efforts and her reputation as a successful, able teacher. While these documents pose an issue for the school administration as to the merits of the charges defendant makes against plaintiff, they do not indicate actual malice or lack of good faith on the part of defendant, sufficient to deprive her of her privilege to express opinions that might otherwise be actionable defamation.

For purposes of this opinion, I take as true the statements and expressions of opinion utilized by plaintiff in her answer to defendant's motion for summary judgment and motion for reconsideration of the trial court's ruling on the motion for summary judgment. Even when so considered, no sufficient claim of actual malice is made.

Under these circumstances, determination of whether the privilege extends to the statement complained of was for the judge. Plaintiff's complaint and her counteraffidavits do not, as a matter of law, indicate the presence of actual malice. Thus, on this record, defendant's statement was privileged as a matter of law.

In view of this conclusion, it is unnecessary to analyze whether, in this case, defendant's statement was constitutionally protected under the Federal First and Fourteenth Amendments from a state libel action.[6]

Consequently, for these reasons, I would hold that under the circumstances of this case, defend-

---

[6] Typical of these Federal cases are *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964), and *Rosenblatt v Baer,* 383 US 75; 86 S Ct 669; 15 L Ed 2d 597 (1966).

ant possessed a privilege to make the written expressions that are complained of, and the trial court should have granted defendant's motion for summary judgment.

As a matter of fact, any other result would cause an intolerable situation in the public schools where persons in authority could not exercise their judgment and do the jobs for which they are appointed without being subjected to the expense and time of trial on the merits before a jury to defend claims of slander and libel. I would also note that plaintiff has plenty of other remedies by way of the state tenure statute and under the collective bargaining contract that apparently exists in this school district to gain redress of any grievances that may be caused her.

I would vote to reverse the trial court and to grant the motion for summary judgment with costs.