Linda ROSS and Mary Wreford,
Plaintiffs-Appellants,

v.

William BURNS, Defendant-Appellee.

No. 77–1488.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 18, 1979.

Decided Jan. 3, 1980.

Rehearing Denied Feb. 1, 1980.

Sheridan V. Holzman, Gen. Counsel, ACLU of Michigan, Detroit, Mich., David A. Barrett, Joel Gora, ACLU Foundation, Inc., New York City, for plaintiffs-appellants.

Frank J. Kelley, Atty. Gen. of Michigan, Robert A. Derengoski, Sol. Gen., Thomas Casey, Max E. Simon, Asst. Attys. Gen., Lansing, Mich., Robert E. Kostin, Waterford, Mich., for defendant-appellee.

Before MERRITT, BROWN and BOYCE F. MARTIN, Jr., Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Appellants Ross and Wreford were reporters for the *Ann Arbor Sun* (*Sun*), a local biweekly newspaper. On June 28, 1973, they went to the courthouse at Chelsea, Michigan, where appellee Burns, a Michigan State Police officer assigned to

undercover narcotics enforcement duty, was scheduled to give testimony at a preliminary hearing. As Burns neared the courthouse, Ross and Wreford began to photograph him. Burns saw the reporters, approached them, and attempted to seize their cameras and film in order to prevent publication of his photograph. A scuffle ensued, the details of which are the subject of conflicting testimony. The altercation ended at the approach of a uniformed policeman. The respondents filed criminal complaints which remain unprosecuted; the record did not indicate Burns filed any complaints against the reporters.

Ross and Wreford each succeeded in obtaining a photograph of Burns before he reached them. These photographs appeared in the July 12, 1973 edition of the *Sun*, one of them captioned "Know Your Enemies." Beneath the photographs was a "news article" decrying the activities of "undercover 'narcs'" in the Ann Arbor area.

As a result of the courthouse incident, appellants filed a civil rights complaint under 42 U.S.C. § 1983. In Count I, appellants alleged that appellee's conduct violated their First Amendment rights as journalists, their right to Fourth Amendment protection from unreasonable searches and seizures, and their federal statutory right not to be assaulted, battered, and falsely imprisoned by a state police officer. Counts II, III, and IV, all pendent claims based on Michigan law, alleged that appellee's actions constituted assault and battery, false imprisonment, and intentional infliction of emotional distress.

Appellee counterclaimed, alleging that appellants' use of his photographs amounted to invasion of privacy and intentional infliction of emotional distress. The emotional distress action rested on the premise that publication of Burns' identity as an undercover officer increased his risk of recognition in the community and thereby jeopardized his personal safety and efficacy on the job. This exposure, claimed Burns, was a source of great anxiety and emotional distress.

The trial court dismissed appellants' Fourth Amendment allegation and directed a verdict against appellee's invasion of privacy counterclaim. The remaining issues were submitted to a jury which denied relief on each of appellants' claims but found for appellee on his emotional distress counterclaim. The jury assessed $5,000 in compensatory damages and $35,000 in exemplary damages against appellant Ross and $.01 in compensatory damages against appellant Wreford.

After the jury findings, appellants moved for a judgment notwithstanding the verdict or a new trial on their state tort claims and for a judgment notwithstanding the verdict on appellee's emotional distress counterclaim. The trial court issued an opinion and order denying these motions.

This appeal presents four issues:

(1) Appellants contend that the trial court erred in refusing to enter a directed verdict or judgment notwithstanding the verdict on appellee's counterclaim of intentional infliction of emotional distress. In support of that position appellants rely on two distinct arguments. First, they assert that the evidence at trial was insufficient as a matter of law to satisfy the requirements of an emotional distress claim. Second, they argue that the First Amendment guarantee of a free press insulates them against liability to appellee.

(2) Appellants also contend that they were entitled as a matter of law to a directed verdict on their state tort claims of assault and battery and false imprisonment.

(3) Appellants argue that the trial court's instructions to the jury concerning appellee's reliance on a "good faith" defense were erroneous; they also insist that the trial court should have charged the jury more specifically on the legality of appellants' conduct as journalists.

(4) Finally, appellants seek a determination that the award of exemplary damages for the tort of intentional infliction of emotional distress is an impermissible form of recovery.

We now focus on the substance of this appeal and consider appellants' contention that we should reverse the judgment on appellee's emotional distress counterclaim because the evidence at trial was insufficient as a matter of law to permit submission to the jury. We agree.

The rules governing federal court jurisdiction over pendent state claims require us to decide this question in accordance with Michigan law. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although the Michigan Supreme Court has yet to rule on a case of this nature, the Michigan Court of Appeals has recognized the tort of intentional infliction of emotional distress as a viable cause of action. *Frishett v. State Farm Mutual Insurance Co.*, 3 Mich.App. 688, 143 N.W.2d 612 (1966), *lv. den.*, 379 Mich. 733 (1966). The Michigan Court explicitly adopted the definition in Restatement (Second) of Torts § 46 (1948), which reads in applicable part: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, . . ." *Warren v. June's Mobile Home Village and Sales, Inc.*, 66 Mich.App. 386, 239 N.W.2d 380, 382 (1976).

■ The Restatement definition implies four distinct elements of proof necessary to sustain a claim. A complainant must produce evidence of "extreme and outrageous" conduct, of the actor's injurious intent or reckless disregard for the consequences of his acts, of causation, and of the actual experience of severe distress before his case will be submitted to a jury. Expounding the meaning of "extreme and outrageous" conduct, the Restatement Commentary emphasizes the high threshold standard of proof required on this element of the tort. The actor's motivation, however deplorable, is a separate question which must not be allowed to infect the objective assessment of his conduct.

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

Restatement (Second) of Torts § 46, comment d at 73 (1948).

■ When we apply that analysis to the facts of this case, we find that appellee was unable to satisfy the prerequisites for a jury determination. Examining the record of testimony, giving appellee the benefit of any doubt, it is arguable that there was enough evidence concerning the reporters' intent, the causation of appellee's alleged suffering, and his actual experience of emotional distress to justify submitting the issue to the jury. We need not decide that question, however, for we find the absence of the crucial element of "extreme and outrageous" conduct to be the dispositive issue.

Research into Michigan law has provided relatively little guidance on this point. In *Warren, supra*, plaintiffs' claim of emotional distress was dismissed despite allegations of verbal harassment coupled with acts calculated to defeat plaintiffs' attempts to sell their mobile home. Cases from other jurisdictions, although not controlling, do shed some light on the range of conduct that has been deemed sufficiently "extreme and outrageous" to support a claim. We cite the following cases for illustrative purposes only: *Rockhill v. Pollard*, 290 Or. 54, 485 P.2d 28 (1971), where a mother was held to have a cause of action against a physician who refused to treat her unconscious baby and forced mother and child to wait outside in subfreezing weather immediately after an auto accident; *Samms v. Eccles*, 11 Utah

2d 289, 358 P.2d 344 (1961), in which defendant, over a seven-month period, repeatedly telephoned plaintiff to solicit sexual relations and appeared at her home indecently exposed; *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976), a case involving a mortician's mishandling of a dead body, including the making of false and exaggerated representations to the bereaved family about the details of the body's state of decomposition; and *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3rd Cir. 1979), where a professional football player, forced to retire because of a nonfatal illness, read in a sports column the false assertions of his former team physician that the ex-player was suffering from an incurable and fatal disease. The scientific name of the reported illness was very similar to that of the disease he actually suffered. Renewed extensive medical tests were required to reassure the plaintiff about his true condition.

Appellants' conduct in this case consisted of photographing an undercover police officer in a public place and publishing those photographs and the officer's identity in conjunction with "news articles" expressing strong views on a current political and philosophical controversy. We cannot believe that these acts fall within the meaning of "extreme and outrageous" conduct contemplated by the drafters of the Restatement. Accordingly, we hold that appellee did not and could not have stated a claim upon which relief for intentional infliction of emotional distress might be granted.

Our finding that appellee's counterclaim is insufficient as a matter of Michigan law obviates consideration of appellants' First Amendment argument for reversal. We adhere to the principle of *Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909), which counsels us to refrain from unnecessary constitutional adjudication.

■ Appellants further argue for reversal of the judgment denying them recovery on their state tort claims of assault and battery and false imprisonment. The evidence does suggest that appellee committed a technical battery; however, the trial judge instructed the jury quite clearly on its alternatives in assessing damages. Had the jury been convinced that appellants sustained any damage as a result of Burns' actions, it was certainly free to act on that belief by entering an award. We cannot find that the alleged error caused any injury which would warrant granting appellants a new trial and we therefore decline to disturb this part of the judgment.

■ Appellants further attempt to raise on appeal the issue of error in the trial court's general charge to the jury. They assert that both the trial judge's instruction concerning the legality of their conduct and her analysis of appellee's "good faith" defense constitute reversible error.

The availability of appeal based on assignment of error in a jury charge is however, predicated on compliance with Rule 51, Federal Rules of Civil Procedure. This Rule requires preservation of the issue by a timely objection expressed at trial. Appellants failed to make proper objection even though the trial judge specifically invited counsel to comment after the charge to the jury. Counsel who briefed and argued the appeal did not become involved in this case until after the case was completed in district court.

This Court has recognized an exception to the timely objection rule only where the alleged error is so obvious and prejudicial that justice demands appellate correction. *Ball v. E. I. du Pont de Nemours & Co.*, 519 F.2d 715 (6th Cir. 1975). Our review of the record fails to disclose any such flagrant error in either disputed instruction. We therefore decline further consideration of that issue.

Appellants' final contention concerns the permissibility of an award of exemplary damages for intentional infliction of emotional distress. Our reversal of the trial court's judgment on substantive legal grounds renders pursuit of this question unnecessary; we leave the issue to be determined in some future case by the courts of Michigan.

The judgment is reversed on appellee's counterclaim of intentional infliction of emotional distress and sustained in all other respects.